Case number 22-1013 United States of America v. Ibraheem Musaibli. Oral argument is not to exceed 15 minutes per side. Mr. Goetz for the appellant. May it please the court, Andrew Goetz for the United States. We agree with the district court on an important point. The evidence at the pre-trial hearings here showed that the defendant enlisted, trained, and fought for ISIS as a foot soldier for his brigade of foreign fighters. Where the district court went astray was in concluding that this evidence was not enough to show that the defendant joined a conspiracy or to admit the ISIS records showing the defendant's involvement in that conspiracy. That decision was an abuse of discretion and it should be reversed. Now I'm going to start with why this court has appellate jurisdiction under 18 U.S.C. 3731. I'm going to start with that because it's a threshold issue that this court needs to resolve and because the defense has contested it in their briefing. The order here is appealable under 18 U.S.C. 3731 as an order excluding evidence because the practical effect of the district court's order is to exclude the ISIS documents unless the government shows that the defendant is more than a foot soldier with ISIS. And I'm referring specifically to pages 2345 and 2346 of the district court's order. On page 2345, the district court acknowledges that there was a lengthy evidentiary hearing and that evidentiary hearing quote-unquote amounts to the type of pre-trial mini-trial required for the admissibility of co-conspirator statements. It's Vincent Option 1. And then on the very next page, the district court says that, well, that evidence showed that the defendant enlisted, trained, and fought for ISIS, but that that's not enough to show that the defendant joined a conspiracy. The reason this has the practical effect of excluding evidence is because if the government's evidence at trial does not show more than that, none of these documents are coming in. Now, we agree the district court left open the possibility that maybe a different conspiracy could be proven at trial, and if so, the judge would reconsider and might admit the documents under Vincent Option 2. But those statements have to be read in conjunction with the crux of the district court's analysis, that if the government only showed the defendant was a foot soldier with this ISIS brigade, the documents do not come in. Now I'm happy to answer any further questions on jurisdiction. Otherwise, I will move to the merits. On the merits, all of these documents were admissible as co-conspirator statements. Now, I think it's important to step back and look at the scope of the conspiracy here, not because it's dispositive, but because under either possible construction of the conspiracy, the defendant joined the conspiracy, and these documents were admissible as co-conspirator statements during and in furtherance of that conspiracy. See, the narrower construction of the conspiracy here is the TBZ brigade, the Defendant's Brigade of Foreign Fighters, that the defendant agreed to join when he, after he traveled through Yemen, arrived in, I believe, Iraq or Syria, went to training camp, swore allegiance to ISIS's leader, and was assigned to a brigade. That's the brigade he joined, this TBZ brigade. Even if the court construes the conspiracy narrowly as involving just that TBZ brigade, rather than a broader construction involving ISIS as a whole, all of these documents are admissible as co-conspirator statements. And one thing I would like to clarify, under Rule 801d2e, the conspiracy for purposes of admissibility doesn't actually have to be a conspiracy to commit a particular crime. That's different from substantive criminal law. To prove the defendant's guilt, of course, we have to show that the defendant agreed to commit a particular crime. 801d2e- Is the conspiracy that the defendant joined the TMZ brigade, TBZ brigade, and that alone constitutes a conspiracy? Yes, Your Honor. Under 801d2e, for purposes of admissibility, yes. It probably would also for purposes of substantive guilt here, because that would probably be enough to prove guilt on the charge conspiracy. But keep in mind, 801d2e is about party admissions. When is it appropriate to hold an out-of-court statement against the defendant for the truth of the matter asserted? So, of course, the defendant's own statements qualify, adoptive admissions qualify, statements by an agent qualify, but also statements when the defendant joins a joint venture. Whatever that joint venture may be, as long as those statements are admissible during and in furtherance of the conspiracy, or in furtherance of that joint venture. And I think every court that I'm aware of to consider the question has held that that joint venture doesn't actually have to be a crime, it's just a joint venture, because what we're dealing with is party admissions, not substantive criminal liability. And that is what we have here. We have the defendant swearing allegiance to ISIS, joining this brigade, fighting for this brigade, being paid by this brigade. We have a series of payments. So that latter distinction would be a statement that so-and-so was shot in the leg, or so-and-so got a paycheck for two family members. Those aren't crimes, but you would say if they're in furtherance of the overall operation, they would be admissible even though those statements are not crimes. Is that the distinction? I think for the most part, Judge Boggs, it's... Correct me. Yeah, so what I'm saying is the conspiracy as a whole, joining that conspiracy doesn't have to be a crime. I think you're talking about whether or not the statements themselves are independently criminal. I think if the conspiracy as a whole is a crime or not a crime, the statements themselves don't have to be independently criminal. They just have to be during and in furtherance of the conspiracy. So if you join the Friends of the Cincinnati Library, then any statements of various Friends would be admissible under the co-conspirator exception or rule? So not quite, Your Honor, because keep in mind it's not just that you joined. It's that the statements have to be during and in furtherance of your involvement. Yes, so join the Friends of the Cincinnati Library for a two-year period, and then you decide, oh, I really don't like the Friends. I'm going to leave. I mean, essentially that's what happened here, that he joins TBZ and then does his duties within TBZ and leaves, right? I know we can characterize the duties as crimes, yes. So leaves is a... He was captured. Captured. I mean, it's not quite leaves when you're captured. Well, you do leave if you're captured. That's fair. I think leave presupposes some sort of volitional decision by the defendant. So I think that's right, Your Honor. No, it's not going to come up that much where the Friends of the Library statements during and in furtherance of that joint venture are going to be admissible as a party opponent, but this does come up occasionally in civil cases where it's not a criminal enterprise, and yet they're still admissible against one of the parties of that joint venture. Now, one last point I'd like to make on conspiracy is that we're not asking for anything different than applies in any other case. I mean, drug records are regularly admitted as co-conspirator statements. We have the East German intelligence records in Squillicote. I mean, those are, granted it's an out-of-circuit decision, but that Fourth Circuit analysis on the East German intelligence records is directly on point here. Those records are almost identical to the type of records we have here, and the Fourth Circuit concluded that they were co-conspirator statements. Would this position, if we were to adopt your position, would that cover all of the exhibits that you wanted to introduce, or I thought it was only Exhibits 1, 4, 5, 8, and 9? So, maybe I'm not understanding the question. The exhibits we have sought to appeal on hearsay issues? I think the answer is yes. It covers all? It covers all of them. The ones I think, Your Honor, omitted are 2 and 3. They were exhibits by the brigade, one identifying who the administrators are of the brigade. That's Exhibit 3, and 2 was a profile of an ISIS fighter with whom the defendant agreed to recruit two teenagers from London to join ISIS. So, those would come in within the co-conspirator exception? Yes, yes. I think if the court rules our way on co-conspirator exception, it can stop its analysis there, because all of the exhibits qualify as co-conspirator statements. I do want to touch on business records. If the court rules against us here, we have challenged the district court's ruling on the business records decision as to exhibits 1, 2, and 3 only. Now, those are records that one of the witnesses at the hearing here, Al-Madayoum, testified came from the database that he managed every day, with a brief period where somebody else took it over, every day for six months. Now, it's very rare in a foreign terrorist prosecution that we can provide a records custodian, much less one who is administering a database like this. I mean, we don't get 902.11 certifications mailed to us by ISIS. They don't usually volunteer to send us records custodians, but we actually have one here. And that records custodian managed that database, said that that database was necessary for the functioning of the brigade, that they entered that data regularly to show who was available to fight, who they were, whether they were injured, whether they were absent without leave. This is the paradigmatic case of a business record, or an organizational record, excuse me, because it was necessary to the functioning of the brigade. But did that individual manage it every single moment, or were there other people who could have put various things in it? Does that matter? So the answer is no, he didn't manage it every single moment, but no, it doesn't matter. He didn't manage it every single moment. He testified that he took over the database at some point. I think it was in late spring, early summer of 2016. The database already existed before he took it over, and then he managed it with a break the rest of the year. So he did manage it for a lengthy period of time, but more importantly, that's actually not required under this court's case law. All that's required is somebody who is familiar with the organization's record-keeping procedure. My red light is about to go on. Unless the court has any further questions, I'd ask that the district court's decision be reversed. Good afternoon, Your Honors. John Shea appearing with and on behalf of Ibrahim Moussaibly. Your Honors, I'd like to start with the jurisdictional issue. The Section 3731 issue, and it's our position that the appeal does not properly lie here because Judge Lawson's order in no way, not expressly nor in practical effect, was an exclusion or a suppression of evidence. The government here sought to have these documents pre-admitted. Judge Lawson considered six witnesses over about a day and a half of test, I'm sorry, not a day and a half of testimony, one morning and part of a second morning of testimony. And at the end of the day, his decision was to defer deciding until he had more information at trial. I thought he said with the information that he had, that this was not enough to admit this evidence. Correct. Okay, so why isn't that pretty important for the government to be able to appeal? Because if you go to trial with exactly that evidence, and the D.J. continues to rule in the exact same way, and the government, if it loses the case, cannot appeal because of double jeopardy. Fair question. And that goes to the reason why we have 3731 to begin with. I get it. That's why I prefaced, I think I prefaced this, by saying the order did not expressly exclude it, and it does not expressly exclude it. As a matter of fact, the language of the order is, come back and see me after you have provided additional evidence on why the defendant joined the conspiracy you have posited, and why these documents further that particular conspiracy. And I said the alternative is if the order has that practical effect. I don't accept the government's contention that they're not going to present any other evidence on this. They presented five or six witnesses over, like I said, not even a full day, one half day, one partial morning, and they've told, trial counsel has told us, this case is going to go three to four weeks. It is hard for me to imagine that there is not going to be substantial additional evidence of conspiracy, and the defendant's alleged participation in that conspiracy in that three to four weeks. So I don't believe that the order expressly excludes it. I believe by its language it holds open the question, nor do I believe that as a practical matter it counts as an exclusion. Let me take that, by the way, to bridge. Do you know who their witnesses are at this point? We have a witness list, yes. Okay, and are there other people there that you think are going to have additional evidence about conspiracy? Absolutely. Oh, yeah? Yes. That doesn't mean I'm not going to cross-examine that vigorously, but there's going to be other evidence, other witnesses they're going to put on that goes to conspiracy. But does that mean that nevertheless, under this hypothetical, that they're going to trial, or are you saying that they should have in fact gone back to the district court pre-trial, and then maybe it would be final? This is the problem. The conspiracy posited by the government below was that ISIS was a, I'm using their words, global criminal conspiracy. A caliphate that Mr. Moose Sabley joined by raising his hand and saying I swear fealty to the caliphate. And what Judge Lawson said, they didn't talk about the narrow conspiracy, the alternate theory is he's a co-conspirator with his compatriots in the TBZ brigade, or anything like that. They said Mr. Moose Sabley joined ISIS writ large, a criminal global conspiracy, and therefore all of these records, which were created in furtherance of that criminal global conspiracy, come in as co-conspirator statements, regardless of whether they had any connection to Mr. Moose Sabley or not. So Judge Lawson, whose decision you guys are, you ladies and gentlemen, are evaluating under an abuse of discretion standard, when you're evaluating whether he's abused his discretion, you must evaluate it from the arguments that were placed before him by the government at that time. Not just the arguments that were placed before you here on appeal. And the arguments placed before him at that time was Mr. Moose Sabley is a co-conspirator of ISIS writ large, because he swore an oath and did other things in connection with that. Were these documents, these various exhibits, having to do with the TBZ brigade, or were they having to do with ISIS in general? Some were and some were not. Some had to do with ISIS in general. There's budgets that came out of the Department of Finance. There's spreadsheets that came out of the Department of the Treasury. But did they have to do with Mr. Moose Sabley? Mr. Moose Sabley is referenced in them, but they weren't generated for Mr. Moose Sabley or the TBZ brigade. They were generated for other reasons, according to the experts who testified at this hearing. And according to the government's own arguments below, that these were documents that generally furthered the global criminal conspiracy of ISIS writ large. Which gets back to your question about the Friends of the Library, and it gets back to the case of U.S. v. Gigante, which was cited by both sides in their briefs. Gigante was a mafia case, and there were co-conspirator statements that were proffered. And the Second Circuit Court of Appeals said that some of them were proffered improperly because they had nothing to do with the specific conspiracy that the mafia defendant in that case was charged with, or was alleged to have been part of. They went to the general nature of the mafia, the general existence of the mafia. And I would submit to the court that what the government argued below to Judge Lawson was, these records advance ISIS generally, and Mr. Moose Sabley swore fealty to ISIS, therefore they come in against him. What's wrong with that? I can see a more specific conspiracy as to the brigade that he joined, but he joined ISIS, the movement, the global movement, and what's wrong with saying he's part of the global conspiracy? And therefore it does come in, and it's still the co-conspirator exception. Because conceptually, Judge, just as if I joined the Friends of the Cincinnati Library and was a member of the Friends of the Cincinnati Library and active in it for two years, that agreement that I made with the Friends of the Cincinnati Library didn't necessarily encompass what their budget functions were, what their payables functions were. He joined ISIS to effectuate the goals of ISIS. I mean, he's not in there for a limited purpose, is he? I mean, he's in ISIS all the way, I thought. No? No. No. The evidence is clearly muddy on that, and that's what the government argues, but Judge Lawson found that it appeared to him the only evidence regarding the purpose of Mr. Moussaibly joining ISIS was to fight the infidels in the name of Allah, not to further ISIS as a government, not to further ISIS as a caliphate, not to establish ISIS as any of those things. That was specific. I'm paraphrasing, of course. I'm sorry. Bigger goals. He didn't subscribe to all their goals, just some of them? Well, the point is there is no evidence that he subscribed to the broader goals, and as a district judge... Well, if he joins the organization, I assume he's in for all the goals. That's all. I don't believe that that follows as a matter of course, Your Honor, in conspiracy law or conceptually, and that's what the Gigante Court said. The Gigante Court said, if you're admitting mafia records, now it was harmless error in that case, but they found error in the district court judge admitting mafia records against a mafioso that had nothing to do with what the mafioso was doing or the specific conspiracy the mafioso was... He was in a more limited conspiracy than the overall thing. Yes, sir. And your argument here is that your client is in a more limited conspiracy. It's just the conspiracy to be a part of the TBZ Brigade. My argument is my client wasn't involved in a conspiracy at all, but that gets into the merits of the defenses, but the point is the government had the burden of proving that he was such a member of ISIS writ large that every document that ISIS ever created could be attributed to him as a co-conspirator statement. I think that is a gross overstatement. I mean, would you agree that it's really semantics that the judge denied a motion to admit and that denying a motion to admit evidence, documents, is really the same thing as a motion to exclude evidence? If it's denied? Yes. The judge... If we assume, okay, we get past it, and say he actually has denied it, would you agree that it's just a semantic distinction to say he denied a motion to admit and that that's basically the same as a motion to exclude? No. I think semantics implies insignificant, and I think it's more significant than that. Is there a distinction then? I believe so. Okay. What's the distinction? Well, if Judge Lawson had said, I deny your motion to admit these documents, full stop, that's a denial of admission. When the judge says... That's the same, you would agree, that's the same thing as granting a motion to suppress. Yes, sir. Or a motion to exclude. But where he says, where the judge says, he or she says, I'm denying you a motion to pre-admit because I don't have sufficient information yet to satisfy me that you've laid the proper foundation, that's different. That's a deferral. That puts the government in an intolerable situation that a crafty DJ who doesn't want to be reviewed on his evidentiary ruling will say, at this point I can't allow the admission, but I'm not deciding this finally because you may have some more evidence. And then the government can't, other than renewing this motion a few weeks before trial and then delaying trial again for an appeal, the government can't get review of that and the double jeopardy problem arises. Again, Your Honor, if the government had argued below that Mr. Moosably was, there was evidence that Mr. Moosably joined the TBZ Brigade and in that regard was in a conspiracy that is proscribed by 18 U.S. Code 2339 and 2339A because it evidences providing material support to a designated foreign terrorist organization and left it at that, Judge Lawson would have had a different analysis. But Judge Lawson's analysis came from the government's rationale for why these records were to come in, all of them, because he was simply a general member of ISIS. That is an overreach by the government, I would argue, and is not supported by the case law and that's the argument that Judge Lawson said, I don't get that. I see perhaps evidence of this narrower conspiracy, but you're arguing there's this broad conspiracy, they come in for that, and I don't get that, I want to hear more about that because government, if you're right, that he joined this broad conspiracy, then maybe that impacts how I decide on admissibility. But he has to frame his response to the motion based on the rationale given by the motion. Would the co-conspirator exception, if we found it was valid here, would it apply to all of the documents? If you found, Your Honor, that Mr. Musebli joined ISIS writ large, then I don't know how, there are statements of ISIS, right? And so there may be other reasons to keep them out, 403 reasons, but if you found that there was sufficient evidence to hold Mr. Musebli to being a co-conspirator with ISIS writ large, then I don't know what argument I would have to say that those records are not co-conspirator statements. But I think that is the problem to be resolved with respect to those particular records. So using the Giganti case and the mafia, suppose hypothetically, suppose there were documents showing someone was a member of the Cleveland mafia, and then there was evidence that all the mafias around the U.S. all interacted in furtherance of mafiosi activities. Would that be enough to allow the co-conspirator exception to apply? It could be, and Giganti actually discussed that. It could be. Hypothetically, the families from different areas actually expressing it together. Even though this particular defendant is just joining the local branch. There still might be an argument that he has not joined the conspiracy that broadly. Listen, conspiracy theory, as you know better than I do, is pretty muddy. And where the edges are seem sometimes difficult to identify. But you do have to join. A conspiracy is an agreement, and you do have to at least look at what the nature and extent is of the agreement of the defendant who joined. So it would depend on that. I'd like to touch on business records for a second because I don't have very much time. You don't have any time. I don't have any time. Will the court indulge me? Yes. All right. So it's not enough just to be familiar with the record-keeping processes. All of the requirements of 803.6 must be met for a business record to come in as a business record. That includes contemporaneous record-keeping and includes a source with personal knowledge, whether it's the record-keeper who has the personal knowledge or the record-keeper getting the information from someone with personal knowledge. Mr. Almodiem, the only witness they have for Exhibits 1, 2, and 3 on business records, cannot say that the version of the records the government proffered were created when he was maintaining the record, that database. He inherited the database. He also said he doesn't know how contemporaneous his predecessor kept that database or what the source was of his predecessor's information with respect to that database. So the government has not provided foundational testimony from that witness regarding contemporaneous making of the record or personal knowledge. And for that reason, Judge Blossom was correct in declining to excluding them as business records and for a similar reason as excluding them under 807. That's just, though, for Exhibits 1 through 3? Yes. The government did not proffer the other five exhibits as business records. So that's just 1 through 3. Thank you. Thank you for indulging me. Thank you. Judge Griffin, I want to start by addressing your question about the evidence of this defendant joining ISIS as a whole because we have his recorded confession in the record. That's Exhibit E, where he talks about going to training camp, talks about swearing allegiance not to the leader of the TBZ Brigade but to the leader of ISIS, al-Baghdadi. We have his Facebook messages to his family members in Exhibit L where he's talking about how he is compelled to do jihad. He's explaining where he is fighting on behalf of ISIS. And I think one of his last messages in August 2016 says, I will continue engaging in jihad even if it means my children have to beg in the streets. We also have the payment records, the records themselves, which the court is allowed to consider in addition to other evidence when determining admissibility here. And I'm referring to Exhibit 4. Exhibit 4 shows that the defendant was paid every month from, I believe, early 2016 through November 2016. And Matt Aoum's testimony was that a person is only paid if they're actually fighting, if they're part of the Brigade. They're handed an envelope of cash, which they then sign for. So we have plenty of evidence that he joined the conspiracy as a whole. However, getting to your question, Judge Moore, the court just doesn't need to go there. Because even if it limits the conspiracy here to the Brigade, which would include the administrator of the Brigade and anybody who is assigning that Brigade to some sort of activity in the field, these records would all be admissible as co-conspirator statements. And let's just walk through them. Exhibit 1 is a list of fighters, people who are available and ready to fight and people who aren't, people who have been killed. It's dated June 5, 2016. It shows who's available. That's necessary information when you're deciding what to do with the Brigade, how to assign them in the field, what you expect of those people. Exhibit 2, this is the fighter sheet where it describes that this particular fighter is absent without leave. This came from the exact same database as Exhibit 1. Exhibit 3 identifies for the hierarchy who the administrators are of TBZ, the Defendant's Brigade. Documents identifying co-conspirators are co-conspirator statements under this court's case law. Exhibit 4 and 5 are payroll records. Exhibit 4 are payroll records showing payments not just for TBZ, but for I think 40,000 ISIS fighters. Now those include TBZ members and they would be introduced only to show Moose Sabley's payments that he received for fighting. Exhibit 5 is actually an entry found in Syria that corresponds exactly with the information in Exhibit 4, which was found in Iraq, that shows the Defendant's payment for one month. Exhibits 8 and 9 are similar. They were found in old Mosul, Iraq, in I think August 2018, much later, but they include similar information. And Exhibit 11 is a marriage certificate. Sorry, I see my red light. I didn't finish because I gave your opponent more time, too. Exhibit 11 is a marriage certificate that the Defendant submitted or showed to his father. It's an ISIS marriage certificate, and the testimony at the hearing showed that a person needed something like that to prove that he was married so that he would be paid more because ISIS fighters were paid more if they were married. I am happy to answer any further questions. Thank you. Thank you. Thank you both for your argument. And Mr. Shea, I see that you're appointed pursuant to the Criminal Justice Act, and we want to thank you for your representation of your client in the interest of justice. Thank you. Thank you both. The case will be submitted, and the clerk may call the next case.